You may be seated. The next case set for oral argument is 17-6017, N. Ray Vague Liquidation, Inc., et cetera, et al. R. Ray Fulmer, II v. Fifth Third Equipment Finance Company, et al. All right, good morning, counsel. Would we have Ms. Whitney Davis in the courtroom? Mr. Whitney Davis, all right. It's happened all my life here. You're up. Good morning. Morning. Thank you for having us here. When those owing heightened duties to preserve and protect and maximize a debtor's estates engage in culpable conduct for their own gain, Rule 60 relief is unnecessary to sue them, especially when no court order releases those people. All right, so Mr. Davis, understand that we've reviewed everything and all the arguments. And I have to say that the briefing was kind of a shotgun approach. So what I'm going to ask you is if you could give us your best reason why we should overturn the bankruptcy court's dismissal of this case. What's the number one reason we should rely on when we reverse the bankruptcy court? The fiduciaries had nothing to do with the order. And the sale is not impacted by this lawsuit. Okay, what do you mean by the fiduciaries had nothing to do with the order? I don't understand that. We've sued the fiduciaries for breach of fiduciary and a number of other causes of action. These are the Lazards, the A&Ms, Alvarez and Marsal. We've sued the creditors committee because they have a heightened duty, if not a fiduciary duty, to the estate. And they're not part of the order. They have nothing to do with the order. The order doesn't release them. The sale order. The sale order, correct. So, clearly, if there's any coattails to the 363M finality or any type of finality doctrine from the common law, it affects the seller, it affects the buyer. The seller's done and the buyer is gone. Excuse me, is your cause of action then based on common law or is it based on 363M? It's based on the common law. The laws of the state of Arkansas. Where does that appear in the briefing? Where does that argument appear? I mean, there's a whole bunch of stuff about 363, notice, constitutionality. Where in your brief do you argue that this is a common law breach of fiduciary duty action? We don't argue it in the brief, it's in the complaint. Those are our causes of action. We spend most of our time on our brief having to respond to this 363M concept that has been advanced by the opposition. That somehow strangers to a sale order enjoy finality and absolution of some sort. The seller is the debt. The buyer has been dissolved. It no longer exists. The assets are down the road in the hands of a third purchaser. There are no causes of action that can impact either seller or buyer at this point. So as far as impacting title, it's not going to impact title. As far as impacting a specific provision of the APA involved, it doesn't impact those. Under the Senecola case and TRISM, it doesn't impact any condition of this sale. Accordingly, I don't think 363M and finality applies to causes of action against our fiduciaries, the fiduciaries of the estate, and the creditors committee, more importantly. And they're not even mentioned. The folks not released in the sale order are these fiduciaries, or those with a heightened duty. And these are the folks that we have alleged and done so at great length and with great detail, colluded and conspired to take money from this estate and hand it either to someone else outside of the order of priority or to line their pockets with their own fees. They don't enjoy finality. They don't enjoy that safe harbor of 363M. This court, I believe second district just came out with an opinion, or recently came out with a brown media opinion, where a law firm tried to state that the 363M finality doctrine covered them, because there was a sale order. And they said the sale was fair in the order, in good faith. And somehow the law firm that tripled dealt engaged in triple dealing, and not providing any type of informed consent to their multiple clients, including the debtor, the control group wanting to buy the debtor, and those that eventually won at the auction. They represented all three of them at one point. And somehow this law firm claimed, well, 363 finality. If it's a good sale, I'm absolved of all my transgressions with my clients. Well, second district said, or second circuit said, no, it's not going to happen. You have nothing to do with this sale. You might have conducted it. You might have engaged in misrepresentations about it. But you're not covered by any release in there, and it has nothing to do with your conduct, and doesn't absolve you of anything. You owed a duty to this debtor, and you breached it, and they get to sue you. So the best argument is, Your Honor, the conduct of these fiduciaries, or those with heightened duties, is so far removed from whatever happened in this sale order. In terms of liability or release, that they have really, they don't belong in that safe harbor. Are you counting the committee members as part of that? Yes, I am. As part of the fiduciary duty? Well, those with a heightened duty, I used both terms, Your Honor. And I know there's arguments among the circuits, and whether it's a fiduciary duty or merely a heightened duty. But certainly when the chair engages in the conduct engaged in by a ball corporation here, they had a duty to not only tell the other committee members to the extent they didn't know, but perhaps even report to its constituency. And instead, we're faced with a confidentiality agreement and a gag order, signed by all of the committee members. That seems to be inconsistent with fully informing your constituency of 6,000 unsecured creditors. The other, I guess more procedural problem, and why this ruling should be reversed is that this court essentially treated this 12B motion as a summary judgment. Made findings of fact regarding privity in the face of allegations that there was fraud going on with the very parties. That the court contends in its order, profound, to be in privity with this trustee. For res judicata purposes, other preclusion theories such as collateral estoppel. Well, we don't need to re-argue everything in the briefs. What we do need to state, though, is findings of fact made in the absence of a Rule 56 motion. Well, under 12C, the plaintiff is entitled to do some discovery and to be notified that the judge is going to make findings of fact, separate and apart from what is in the record. We didn't have that opportunity. And so, for this court, I believe, to affirm the trial court or the bankruptcy court, it has to make those same findings of fact, which were made without authority by this court. Not this court, but the bankruptcy court. So, the sale in this case just served as the object of this culpable conduct and the mode of fraud. That's the only role it took. So, what's your remedy, then? You're suing these defendants, and if you prove that there's been a breach in their fiduciary duty, what are the damages at this point? We don't know yet. They're money damages. Perhaps there will be disgorgement of fees, depending on when there's going to be, or when they left the rails, left the fiduciary rails, so to speak. And there may be damages resulting from certainly the loss of assets due to it, which would be the avoidance actions, and maybe the real estate, we're not sure. It's too early in the case. We have done no discovery, literally, on this. So, we can't state what the damages against the fiduciaries will be. And there might be, essentially, punitive damages, too, depending on the conduct and who is committing it. What about the damages, or what about the committee? Well, to the extent that the committees, well, they're going to have the same species of damages, which would be related to the loss of the assets that were otherwise transferred. Under the fraudulent transfer, the cause of action, which would be the, it would include the fees of Teneo, to the extent they were charged back to the, by the way, Teneo was the financial advisor to the committee. And so, we'd probably seek the disgorgement of fees to the extent we had standing with Teneo. Then, the damages regarding the avoidance actions that were transferred. And, to some extent, the real estate, that was, shall we say, reappraised dramatically. Why didn't you bring this action in state court, if it's a common law claim, and just avoid this whole 363 business? Well, we read the case law as it being, well, first of all, the main bankruptcy action in Allen's was occurring at the same time. And, we thought it best to bring it in front of the court that originally had, there were a lot of facts involved, and there were a lot of parties involved. We wanted to bring it in front of the court that had the most subject matter knowledge of, not only the company, but of all the people involved, especially the fiduciaries that the court appointed. The court had an inherent knowledge of the applications made by these organizations. And, actually approved John Hickman and Alvarez and Marsal to basically take over this company. So, it made more sense. And, if the court wanted to abstain, we certainly wanted to give the court that, the bankruptcy court that opportunity first to have the case in the abstain. If the bankruptcy court issued an order saying that the sale was fair and reasonable, that the sale was done in good faith, all these things, how wouldn't a contrary ruling in your case have some impact on that? I mean, by saying that the professionals that conducted that sale that the court already found was fair and reasonable, conducted in good faith, etc., was somehow a breach of fiduciary duty doesn't mesh, does it? I don't know that a collateral order is going to impact the sale order in any way, shape, or form. Isn't it an attack on the sale order? It is not, because it's a collateral order that doesn't pertain to their conduct. It has nothing to do with the fiduciary's conduct. But, it's inconsistent, isn't it? Yes. Well, the orders are inconsistent. There are many orders that are inconsistent. Not intentionally. They don't need to be, but they're not the real party. Good point. But, they're not the real party in interest. A collateral order as to a non-real party in interest has no impact. And, it doesn't offend any, it doesn't offend either order if they're inconsistent. I just want to make sure I'm understanding. The fraudulent transfer claim that you're arguing is that these professionals were paid amounts that they shouldn't have been paid because they breached their fiduciary duty. What's the basis of the fraudulent transfer? I believe the breach of contract and the breach of fiduciary causes of action would address what they were paid and should they be disgorged, etc. The fraudulent transfer is that assets were transferred from the owner based upon their fraud. But, that's the subject of the sale order, right? The transfer of the assets. That stems directly from the order. So, aren't we talking about two different things here? You're talking about the sale order and how those assets were transferred pursuant to that sale order. And, then you also have a cause of action for a breach of fiduciary duty. Are there two? For the valuation of those assets, Your Honor. See, a fiduciary is supposed to count things, tell their client what they're worth, and then move forward. And, apparently I'm almost out of time. All right. Let's go ahead. This is about the money damages, not about the asset. I understand you're reserving your time. So, you may remain seated. Ms. Lape? All right. May it please the Court. My name is Marcy Lape, and I represent the Defendant Appellees. Despite everything you read in the trustee's briefs and everything you just heard, this is actually a very simple case. Following a public auction, the bankruptcy approved a Section 363 sale of substantially all of the assets of Allen's, Inc. No party requested a sale at that sale, and no party appealed that sale. Two years passed before the trustee brought this adversary proceeding. In that adversary proceeding, he brings 14 separate claims, each of which attack integral findings in that sale order and attack the process that led to that sale. Now, as the Bankruptcy Court properly found, that 363 sale was final, it was unappealable, and as a result, it received heightened protections under 363 finality principles. You don't mean it was unappealable. It was appealable, but nobody appealed it. Exactly, Your Honor. But do you agree or disagree that the claims against the fiduciaries are separate and apart from the 363 sale order? I mean, isn't that a different thing that was not included in the sale, whether or not those duties were breached? Yes, Your Honor, it is different. However, the findings that were made in the sale order, those findings would have to be overturned and reexamined in order to plead a proper claim for breach of fiduciary duty. So in the second stage motion to dismiss, there's a chart at page 46, which is really helpful. And what we did there is we went through each of the claims that were asserted in the underlying complaint, and we told the Bankruptcy Court below, here's what the trustee's allegations are. So on the fiduciary duty claim, for instance, that claim is brought only against the professional defendants. That claim asserts that the professional defendants breached their duties and committed a number of alleged acts, which culminated in a lower auction price than they should have obtained. Okay, now let's think about the 363 order. As Your Honor's recognized earlier during the argument, that order said that the acquired assets were subject to a competitive and good faith bidding process, that the consideration to be paid was fair and reasonable, that it was the best, the highest and best offer available, and that the debtors had demonstrated compelling circumstances for the sale. All of those findings of fact that were in the sale order, those would have to be overturned if you were to consider a breach of fiduciary action that culminated in a lower price. What is your response to the appellant's argument with regard to that issue, that that's boilerplate, that had no substantive evidence to support it? Well, Your Honor, I think that that is an attack on the Bankruptcy Court that's unfounded, quite frankly. It is true that there was not an evidentiary hearing on certain aspects of the sale order. But it's also true that no party or any creditor or anyone who received notice came to that sale hearing and objected and said, we need to put on evidence, we need to prove this up further. And so the court was able to take the record below, which included the auction transcript, which included the bidding procedures, which included the fact that there had been a stalking horse. But those aren't part of our record here, are they? They are, Your Honor, yes, correct. So the Bankruptcy Court had all of that in front of it and was able to make a ruling based on that, that there was a good faith bidding procedure and that the sale was appropriate and in the best interest of all creditors. Who would have brought the objection at that point? The trustee was not appointed. So would it have been the committee who they allege was involved in this breach of fiduciary duty? I mean, what would they have objected to if you believe the appellant's argument that they breached their duty? Well, if you believe the appellant's argument, then I think the persons who would be most probable to bring an objection at that point in time likely would have been the other bidders to the proceeding. So you had McCall, who was another bidder, and then you also had the stalking horse bidder as well. And so I think that either one of those two could have brought forward an objection, along with the creditors, of course. So there were parties, certainly, and the trustee is in privity with the debtor in possession as well as the creditors that had noticed the sale and would have been able to object at that point in time. Now, when Mr. Davis was up here before, he told you that he thought that the number one reason that this court should overturn the bankruptcy court decision was that these principles of finality don't just flow to the seller, or they only flow to the seller. That's just not the case. The case law is very clear in the Eighth Circuit that the principles of finality that come from a Section 363 sale are good not just against the parties to the sale, but are good against the entire world. And that is critical to bankruptcy sales. Critical, these finality principles. Now, it's not that the trustee had no remedy whatsoever. He did. The trustee was appointed here in June of 2014. He had time under Rule 60b-3 until one year following that sale order where he could have attacked this sale order. And in fact, someone did try to attack the sale order, and the trustee argued in favor of it. Did he not? That's absolutely correct, Your Honor. He did when the PACA defendants tried to attack the sale order. So the trustee had time here to attack the sale order for allegations of fraud, misrepresentation, but he blew that deadline. And he also can't establish any of the other exceptions that would allow him to attack the sale order. He failed to prove fraud in the court. There's simply no allegations in the complaint of any wrongdoing on behalf of anyone that would rise to that level of seriousness. No bribery of a judge or jury. There's no affirmative misrepresentation. No, but he's pleading fraud in general, though, as I understand it. He is, but fraud in general, Your Honor, does not rise to the level of fraud on the court. It requires very egregious conduct that defiles the court itself. The fraud that he pleads could have, Your Honor, allowed for a 60b-3 action if he had brought that timely within that one-year bar. Would it be, however, the disinterestedness issue that changed with the professionals in terms of their advice that was given that would give rise to a separate cause of action? If they were employed, for example, as professionals by the estate and their disinterestedness ended at some point because they were attempting to collude or obtain this, wouldn't that be a separate cause of action that was different from the sale? I'm not sure I completely understand your question, Your Honor. Well, when we're talking about fraud upon the court, the court approves the employment saying that they're disinterested. It sounds to me like Mr. Davis is saying at some point in time they were not disinterested. If he's making that claim today, that's certainly not within the complaint. Okay. That was my question. Thank you. Okay. Thanks, Your Honor. So he can't prove fraud on the court. 60B3 is foreclosed. 363N is a statutory exception to the finality principles, but he appears to have waived that argument on appeal. And in any event, none of the committee members who he alleged were potential bidders that could have colluded in setting or controlling the price of the sale were actually potential bidders. None of those parties attempted to qualify as bidders.  There's simply no support for that argument. So those are the actual causes of action that were pled in the complaint, that he could bring these claims based on the 60B3 exception, fraud on the court, or 363N. There was actually 14 separate causes of action. Right. But the method, the avenue for relief, the method that he could use to set aside that sale order. Now, he didn't stop at what's in the complaint, though. In the opposition briefs below, as well as on appeal here, he proceeded to bring new arguments all along of different ways that he thought that he could overturn the sale. And none of those apply either. 60B5 lets someone overturn a sale if prospective application would create undue hardship on a party. But there's no prospective application to the sale order. Once the sale order closed, that was it. 60B5 is inapplicable. 60B6, the catch-all, that allows someone to set aside a sale order if there's an extraordinary reason. But there's another limitation to 60B6 that's extremely important, and that limitation is that the conduct that's alleged can't fall within one of the other categories. And here, the conduct that he's alleged is fraud and collusion, and that falls squarely within the 60B3 exception, which is time-barred. So the last way that the court says that he can set aside, or the trustee says that he can set aside the sale, is through 60B4, which allows a party to set aside a sale for a void judgment, if it's void. And he alleges a number of reasons why this judgment is void. None have merit. First, he alleges that there was no due process that was afforded to the creditors. But all that due process requires here is a notice and an opportunity to be heard. And it's indisputable that the creditors here received that notice and that opportunity to be heard. The sale motion itself was filed on December 23rd. That sale motion sought the order authorizing the sale of the assets, and it had the set bidding procedures in it. It was served that day on all parties that had an interest in the assets or liens in those assets. On January 9th, the debtors filed their notice of sale. Hearing in the bid procedures and objection deadlines. And that notice was served on more than 5,000 creditors on January 10th. That notice was more than 21 days in advance of the sale hearing. It met all of the requirements under the rule. All parties received that notice and opportunity to be heard. There's no due process violation here. I'm not sure what it is. The trustee also alleges that the order is void because of JEVIC, but JEVIC has absolutely no application here. JEVIC involved priorities, or excuse me, JEVIC involved a case involving a structured dismissal and whether or not a structured dismissal could approve of distributions that violated the priority scheme. This case has nothing to do with a structured dismissal or other dismissal. This was a Section 363 sale. And the trustee also hasn't explained any basis on which he thinks he can take a Supreme Court decision from 2017 and set aside a sale order of assets that occurred three years earlier. It would wreak havoc on bankruptcy courts to allow that to happen. JEVIC doesn't apply either. There's no basis to set aside this court order. And because of that, as Your Honors indicated during the trustee's argument, and as we've also talked about earlier, the in rem nature of the sale order prevents these 14 claims, each of which go to the heart of the sale process order. Well, I think what the trustee is saying, though, is I'm not trying to set aside the sale order. What I'm trying to do is seek damages from these professionals who allowed this travesty to happen, that these assets were sold for not their fair value, essentially. And these various professionals caused that to happen and caused the court to approve it. Those professionals being the professionals hired by the debtor as financial advisors, plus, I believe, the members of the Committee of Unsecured Creditors, that he's got some sort of damage claim against them. So how does the sale order stop the trustee's claim against those fiduciaries? Well, in two ways. So first, the principles of finality that stem from 363 do not just protect the seller or the buyer. They're good as against the world. And so even though he's not trying to affect title to the assets, he's still attacking integral provisions in the sale order, like we discussed earlier, the chart that we put forward on. Is there anything in the sale order, though, that addresses whether or not the fiduciaries breached their duty or whether they properly applied what they needed to do? I mean, that wasn't addressed in the sale order, was it? I don't know the answer to that question. That was not something that's been raised in the briefings. But the sale order does address key findings that would have to be overturned to state claims that the assets were not sold at the highest price possible and that the bidding procedures and that the auction process wasn't fair and reasonable. So you can't – I mean, the damages that the trustee tries to get by virtue of his breach of fiduciary duty claim are barred. I mean, they're damages saying that the price wasn't fair, the price wasn't adequate, the price wasn't the best price that he could get. Well, that was determined at that sale order. And aside from the principles of finality that are in 363, there's also the traditional principles of re judicata and collateral estoppel that apply squarely here. So for those who were actually parties to the sale order, re judicata applies. And the court correctly found below that the trustee is precluded from bringing claims against all parties who were part of the sale order. Now, the professional defendants were not actually parties to the sale order, but collateral estoppel still bars the trustee from bringing claims against those defendants. And collateral estoppel, only the party against whom you are trying to preclude an issue needs to be part of that original suit or their privies. And so here, the trustee's privies, the debtor in possession, and the creditors were parties to that sale order. So the issues that were determined in that sale order that were actually litigated and that were essential to that order, those issues, they can't be overturned. The trustee is precluded from trying to re-argue those issues here. A trustee argues that those issues weren't actually litigated because there wasn't an evidentiary hearing, but that's not true. We discussed earlier that there was a long record here that allowed the bankruptcy court to make his findings without evidence, and there was also a witness that was available had the court had any questions that he needed to have answered before he thought that he could order the sale. Your Honors, the court also properly denied the trustee leave to amend here. The trustee, on multiple occasions, tried to insert additional claims in the lawsuit, tried to assert new arguments, and each time the defendants had to spend countless hours addressing his shotgun approach, looking back into the underlying bankruptcy record to show that a lot of the allegations were simply wrong and contradicted by the record, and the bankruptcy court properly found that because of the principles of finality and re-judicata, any further amendment would be futile. Unless Your Honors have additional questions, we respectfully request that you affirm the dismissal and the denial of leave to amend. Thank you. All right, Mr. Davis. Thank you, Your Honor. Let me ask a question. Ms. Latham stated that basically all of the claims against the professionals, the breach of fiduciary duties, they all arise out of the sale. Is it your contention that any of these causes of action would be for something other than the procedures in the sale? Do you understand what I'm asking? I'm not sure. Do you have any claims against the fiduciaries that don't arise from the sale? Well, sure. Okay. Disclosure to either the DIP or the committee to the extent they weren't, I guess, co-opted. The disclosures of what specifically? For instance, Sager Creek, the buyer, used a credit bid from the second lien lender, but the second lien lender never gave it. It was for multi, what, 30-some-odd million dollars. It was never assigned to them. They bid it for their own account, not for someone else's. They used a mythical $34 million that somebody counted either before the sale, during the sale, or most likely after the sale, and told everyone that was okay or didn't get in the way of it. But her question was, that pertained to the sale. Well, in a bankruptcy, I guess, where it's basically a subversive plan where they're going to have a sale, I guess everything might pertain to the sale. But they have to advise people, and if they see collusion and conspiracy going on, which, by the way, counsel's mistaken, Your Honor, with your question, you look at the breach of fiduciary clause of action in that complaint, which we have in front of you, there's conspiracy and there are wrongdoing alleged everywhere. So counsel was mistaken when she said that it was not in there. But to answer your question, the sale is the reason, presumably, for them going through some of the misconduct that they did engage in. It was before the sale, and it was after the sale. So at its core, your breach of fiduciary duty is a collusion argument. You're saying they didn't disclose, and these parties colluded to obtain the assets. So you are under 363 at that point, aren't you? Not 363N collusion. What I'm actually saying is conspiracy. It's collusion with a capital C. Well, it's not 363N collusion, Your Honor, because that's only collusion among prospective bidders. But they were bidders, aren't you saying? The fiduciaries weren't bidders. Well, the fiduciaries were advising the bidders. So if it related to the sale, I guess I'm just not tracking that argument. The fiduciaries were not. The DIPS fiduciaries were supposed to be advising the DIPS, because the court appointed them to do that and approve their fees, multimillion. They got a bonus for selling it, apparently, or helping sell it. But their fees were charged for years before the sale. And were charged, and they received a bonus after the sale that are unrelated to the sale. But they were not doing the DIPS bidding. At some point, as Judge Shadeen, you pointed out, something happened, and they bought into someone else's plan for these assets. And the concept that somehow the order and what findings it has that are necessarily litigative for collateral estoppel purposes, the fiduciary breach, whether it happened or not, was not necessarily litigated. It wasn't even a part of the order. So to say that the order and finality doctrine somehow applies to the fiduciaries and their breaches is, I think, it's a poor argument that is not recognized in this circuit. But how can you have a breach of fiduciary duty if there's already been a finding by the court that the sale was fair and reasonable? It's not binding. It is not binding on the trustee because they were not present. The trustee was not present. The trustee's privy was not present. And we've cited all the case law on that. The trustee is not bound by a decision by the court on that subject. And it was never litigated. There was never a pleading proposed. What about good against the world? What's that? Oh, the good against the world argument. I think Trism spoke to that, and Parkland spoke to that. It's good against the world for purposes of title, and they don't want you suing certain people. They never excluded the dips. They never provided absolution to the dips fiduciaries or to the committee for consorting with prospective bidders. It's not good against the world. It didn't even litigate those things. It litigated title, and it litigated how much it was. That's all it litigated. Oh, no, it litigated a lot more than that. The order found good faith. The order found that the sale was fair and reasonable. The order found that the price was proper. It found all those things. And there's not a single collateralist application on it that supports binding this trustee to those findings in the order as to its fiduciaries and whether they breached their fiduciary duties, not a single one. And you won't find it. All right. Thank you. As a matter of fact, Brown versus the Brown media case says just the opposite. Thank you. Okay.